# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>)<br>)<br>**v.** )<br>)<br>**HASAN WORTHY,** )<br>)<br>**Defendant** ) | **Criminal No. 2:12-cr-135-DBH** |

## DECISION AND ORDER ON DEFENDANT'S
## MOTION TO SUPPRESS

Some of the evidence in the case that the government is prosecuting against this defendant comes from "wiretaps"—intercepted voice and text communications. Congress directs that court orders permitting electronic monitoring of communications require that the monitoring "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). The two Orders permitting the wiretaps here do just that,[1] and in following the Orders, law enforcement

---

[1] The wiretap orders are sealed, but they have been provided to defense counsel. With respect to minimization, the orders provide that the interception be conducted in such a way as to minimize the recording of communications not subject to collection, that monitoring of a communication must cease when it is determined that the communication is unrelated to the investigation, that interception must immediately cease when it is determined through voice identification that none of the target subjects are participants in the communication, unless it is determined that the communication is criminal in nature, that if the intercepted communications are in a code or foreign language and an expert in that code or foreign language is not available at that time, minimization be accomplished as soon as practicable after the interception, and that if a communication is minimized, monitoring agents are authorized to spot check the communication to insure that it has not turned to criminal matters.

agents listening to intercepted phone calls were required to stop listening and recording when it became apparent that a conversation was innocent in nature, not related to the investigation. They could sample the call intermittently thereafter, however, to determine if the conversation had moved to the topic of the investigation.

Nevertheless, the defendant has moved to suppress *all* the intercepted communications in this case "and any fruits that flow through them" under 18 U.S.C. § 2518(10)(a). Def. Worthy's Supplemental Mem. Regarding Minimization Efforts Filed in Support of Def.'s Mot. to Suppress Wire Intercepts at 1 (ECF No. 77) ("Def.'s Supplemental Mem. re Minimization"). The Magistrate Judge and I repeatedly rejected such a motion in the previous case against this defendant, United States v. Worthy, No. 2:10-cr-136-DBH (ECF Nos. 572, 384 and 348), but ultimately I dismissed that prosecution without prejudice because of a Speedy Trial Act violation. Dec. and Order on Def.'s Mot. to Dismiss Fourth Superseding Indictment for Violation of Speedy Trial Rights, No. 2:10-cr-00136 (ECF No. 653). After the government re-indicted in this case, the defendant renewed his motion to suppress all intercepts. I see no reason to repeat the earlier analyses in United States v. Worthy, No. 2:10-cr-136-DBH. They apply to this motion as well.

But one thing has changed. The government has now turned over to the defense all its so-called minimization records, and I have ordered that the defense be allowed access to redacted versions of the progress reports that the

2

government filed under seal during the wiretaps.[2]  In a supplemental memorandum filed September 4, 2012, the defendant argues that these records and reports require that his motion to suppress all intercepts be granted because they show that the government failed to take adequate steps to minimize the interceptions.  Def.'s Supplemental Mem. re Minimization at 1 (ECF No. 77).  Once again, I **DENY** the motion.

It is important to specify the basis for and the nature of the relief the defendant is seeking.  He is not arguing that the particular communications that the government wants the jury to hear or see should not have been recorded or that they are not individually admissible.  Instead, he argues that the government's wiretapping procedures were so tainted by a widespread failure to minimize, that *no* recorded conversation or text message should be heard or seen by the jury, regardless of whether that particular communication was properly minimized and recorded and is otherwise admissible into evidence.

The obstacles to the success of the defendant's argument are formidable.  According to the Supreme Court, "[t]he statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversation."  Scott v. United States, 436 U.S. 128, 140 (1978).  The only case I have found where a district judge actually granted relief suppressing all

---

[2] The government's written summaries of certain calls were redacted from the reports.

intercepted communications was reversed on appeal. United States v. Scott, 331 F. Supp. 233 (D. D.C. 1971), rev'd, 504 F.2d 194 (D.C. Cir. 1974).³ The First Circuit has referred in dictum to the possibility of such relief, but only for the "particularly horrendous" case, where "agents acted in such blatant and egregious disregard of the minimization order that no lesser sanction will serve." United States v. Hoffman, 832 F.2d 1299, 1309 (1st Cir. 1987), quoted approvingly in United States v. Charles, 213 F.3d 10, 23 (1st Cir. 2000) ("taint upon the investigation as a whole sufficient to warrant [such] sweeping relief"), quoted in turn approvingly in United States v. Baltas, 236 F.3d 27, 32 (1st Cir. 2001).

Drawing on the statistical summaries the government furnished in its filings with the court during and at the close of the intercepts, the defendant argues that the percentage of calls minimized is too low. Def.'s Supplemental Mem. re Minimization at 2-3 (ECF No. 77). But percentages can never be determinative, because there is no standard on how a phone will be used, whether primarily for criminal activity or incidentally for criminal activity, and any patterns may shift over time. "[B]lind reliance on the percentage of nonpertinent calls intercepted is not a sure guide to the correct answer. Such percentages may provide assistance, but there are surely cases . . . where the percentage of nonpertinent calls is relatively high and yet their interception was still reasonable." Scott, 436 U.S. at 140; United States v. Homick, 964 F.2d

---

³ This is the same case that went to the Supreme Court, but the Supreme Court did not rule on the scope of the suppression remedy. 436 U.S. at 136 n.10 (1978).

899, 903 (9th Cir. 1992) ("[T]he interception of even a relatively high percentage of nonpertinent calls is an inaccurate indicator of whether or not the government complied with the minimization requirement.") (citing Scott, 436 U.S. at 140); Charles, 213 F.3d at 22-23 (no suppression of wiretap evidence where 62 calls minimized out of more than 800 (or less than 7.75%)); United States v. Quintana, 508 F.2d 867, 873-75 (7th Cir. 1975) (no suppression of wiretap evidence necessary where only 153 of 2,000 (7.65%) intercepted nonminimized calls were pertinent enough to transcribe (thus 92.35% of all intercepted nonminimized calls were not pertinent)).

Instead, in evaluating the adequacy of the government's minimization efforts, courts look to several factors, including: (1) the nature and complexity of the suspected crimes; (2) the thoroughness of the government's precautions to bring about minimization; and (3) the degree of judicial supervision over the surveillance process. United States v. Lopez, 300 F.3d 46, 57 (1st Cir. 2002) (citing United States v. London, 66 F.3d 1227, 1236 (1st Cir. 1995)); Charles, 213 F.3d at 23.

With respect to the first factor, as the First Circuit has noted, where an investigation involves a drug ring of unknown proportion, as in this case, "the need to allow latitude to eavesdroppers is close to its zenith." Charles, 213 F.3d at 22 (citing Hoffman, 832 F.2d at 1308). See also United States v. Bennett, 219 F.3d 1117, 1124 (9th Cir. 2000) (in such cases "the need to allow latitude to monitoring agents is paramount"); United States v. Hyde, 574 F.2d 856, 869 (5th Cir. 1978) ("It was appropriate for agents investigating this

widespread [drug] conspiracy to monitor calls more extensively than might have been appropriate in a simpler case."). Courts have explained that one reason for allowing this leeway in drug investigations is the common practice of individuals in the drug trade to use coded language. United States v. Garcia, 232 F.3d 1309, 1316-17 (10th Cir. 2000) (the use of coded references to methamphetamine, the fact that call was extended by initial pause and time during which caller was placed on hold, and conversations including references to assaults were considered in finding that government conducted minimization efforts reasonably); United States v. Wilson, 835 F.2d 1440, 1445-46 (D.C. Cir. 1987) (rejecting defendant's minimization argument where alleged conspirators' use of codes made it difficult to determine which calls would be criminal in nature, since monitored conversations often started with discussion of noncriminal matters followed by conversation concerning a mixture of personal and criminal matters, agents could reasonably have believed that conversation might turn at any moment to the criminal activities). These factors apply here.

With respect to the second factor, the records shows that the government took responsible steps to bring about minimization in this case. The government states that it held minimization meetings with agents and monitoring personnel for each phone line prior to the commencement of the interception period. At those meetings, the government reviewed the minimization requirements set forth in the court orders as well as the procedures for minimizing. First Report to the Court, 2:10-mc-150-DBH, at 1-

6

2 (ECF No. 4); First Report to the Court, 2:10-mc-165-DBH, at 2 (ECF No. 4). The agents and monitoring personnel minimized calls on all three monitored lines. Minimization Instructions for Electronic Interception, 2:10-cr-136-DBH (ECF No. 325-2). On the first target telephone, 3,807 completed calls occurred from June 3, 2010 to June 30, 2010, inclusive of 2,458 SMS calls (text messages); of these 3,807 calls, 167 were minimized. While the statistical summary states that 4.39% of all completed calls were minimized, this figure may be misleading given the impossibility of minimizing a text message. It appears that 12.37% (167 of 1,349) of completed *non*-SMS calls made on the first target telephone were minimized. For the second target telephone, 1,902 completed calls occurred from July 6, 2010 to August 4, 2010, inclusive of 877 SMS calls (text messages); of these 1,902 calls, 54 were minimized. Excluding text messages, 5.26% (54 of 1025) of completed calls made on the second target telephone were minimized. For the third target telephone, two separate statistical summaries are provided for the period from July 10, 2010 to August 5, 2010. The two summaries combine to show a total of 163 completed calls during this period, none of which were SMS calls. 49.07% (80 of 163) of completed calls made on the third target telephone were minimized.

These numbers show that the agents were not "blatantly" and "egregiously" ignoring the minimization portion of the Orders.

With respect to the third factor, the Orders issued here were detailed in the requirements that were judicially imposed, and progress reports were made after 15 days and again when the wiretaps were closed. These periodic reports

provided details about the operation of the wiretaps and summarized the call line sheets.

The defendant also asserts that the intercepted recordings are untrustworthy due to technical difficulties that the government encountered with one of its wiretaps. Def.'s Supplemental Mem. re Minimization 3-5 (ECF No. 77). The defendant quotes the periodic reports for support. For example, he points out that "[o]n June 23, 2010 between approximately 1 p.m. and 10:00 p.m., only audio and text messages were intercepted—connecting number and call direction were not captured due to problems with the pen register/trap and trace line." Id. at 4.

The system's failure to collect data on the connecting number and call direction results in less information available to both the defendant and the government, but it does not result in the recording being unreliable. The other technical difficulties noted in the reports were associated only with one of the telephones intercepted and the technical difficulties related to the system not intercepting some communications, or not recognizing when calls came in during an on-going call (*i.e.*, not recognizing call waiting). There is no evidence that the technical difficulties impeded the government's minimization efforts or impacted any of the recordings the government intends to offer as evidence at trial.

I conclude that the minimization efforts here, while perhaps not perfect, do not approach the Hoffman/Charles/Baltas standards of malfeasance and do not justify wholesale suppression of all communications.

8

Instead, the appropriate relief is that suggested in other cases—suppression of *particular* calls that were not properly minimized.  See Baltas, 236 F.3d 27, 32 (1st Cir. 2001) ("[E]rrors in minimizing one particular interception within the context of a lengthy and complex investigation [. . .] do not automatically warrant suppression of all the evidence."); Charles, 213 F.3d 10, 22 (1st Cir. 2000) (district court properly suppressed only the call that violated the minimization order, and not the entire wiretap, where no evidence that entire investigation was tainted); Hoffman, 832 F.2d at 1309 (While the district court suppressed 22 calls it believed to be improperly minimized, defendant was not entitled to total suppression because the "minimization effort, assayed in light of the totality of the circumstances, was managed reasonably."); United States v. Mansoori, 304 F.3d 635, 648 (7th Cir. 2002) (If the defendants were to prevail on their minimization argument, "the appropriate relief likely would be to suppress any conversation or conversations that were inappropriately monitored."); United States v. Cox, 462 F.2d 1293 (8th Cir. 1972).  But the defendant has identified no call or text message that the government proposes to present to the jury that has been improperly minimized.

The motion to suppress is therefore **DENIED** for the reasons stated here and for the reasons stated in the previous case, United States v. Worthy, No. 2:10-cr-136-DBH.[4]

---

[4] The Worthy prosecutions have taken on unusual complexity for this District.  In reviewing yet again the succession of filings on the motion to suppress the wiretaps, I note that the
*(continued next page)*

defendant dressed up an argument in his November 2011 Motion to Suppress, 2:10-cr-136-DBH (ECF No. 527), that he had not made in his first such motion (November 2010), Mot. to Suppress, 2:10-cr-136-DBH (ECF No. 218).  Part of it did appear in his minimization argument in a Supplemental Memorandum he filed in February 2011, Def. Worthy's Supplemental Mem. in Support of Mot. to Suppress Wire Intercepts, 2:10-cr-136-DBH (ECF No. 324).  That supplemental filing resulted from a conference of counsel with the Magistrate Judge to inquire whether the defendant had decided to waive the minimization argument, the argument having not been addressed in the earlier briefing.  The Magistrate Judge then granted a government motion to strike some of the arguments in ECF No. 324 as beyond the authority granted for the supplemental filing.  Mem. Dec. on Hr'g Request and Mots. to Strike and Recommended Dec. on Mots. to Suppress, 2:10-cr-136-DBH, at 13 (ECF No. 348) ("[T]the following arguments in Worthy's supplemental brief are disregarded: (i) a challenge to the wire intercepts based on lack of judicial oversight, [and] (ii) a challenge to the wire intercepts based upon the claim that the orders authorizing them were overbroad in agency authorization and description of offenses.")  I affirmed the Magistrate Judge in the Order Affirming Memorandum Decisions and Recommended Decisions of the Magistrate Judge, 2:10-cr-136-DBH (ECF No. 384).

   Specifically, in his November 2011 Motion to Suppress, 2:10-cr-136-DBH, at 8 (ECF No. 527), the defendant added a new section and subject matter heading, distinct from minimization, in his argument that the Court's two orders authorizing the wiretaps were "insufficient on their face" (a phrase from 18 U.S.C. § 2518(10)(a)(ii)) in failing to meet certain statutory requirements.  He repeats the identical argument in the current motion, Mot. to Suppress Wire Intercepts, 2:12-cr-135-DBH, at 6 (ECF No. 47).  In my February 2012 ruling on the November 2011 motion, I did not address separately the reformulated argument when I noted that most of the defendant's arguments in his second Motion to Suppress (ECF No. 527) were repetitive of earlier arguments and required no new ruling.  Dec. and Order on Def. Worthy's Pending Mots., 2:10-cr-136-DBH (ECF No. 572).  To the extent that the earlier rulings by Magistrate Judge Rich and me do not dispose of the argument (and I believe they do), I rule on it now.  The defendant cites no cases (the government has not responded to the substance of the argument at any time).

   The defendant says that the Court's two wiretap Orders fail the statutory requirement of "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates."  Mot. to Suppress Wire Intercepts, 2:12-cr-135-DBH, at 7 (ECF No. 47) (quoting 18 U.S.C. § 2518(4)(c)).  I disagree.  The Orders specify the telephone numbers and electronic serial numbers in question and extend monitoring permission to numbers accessed through them and to changed telephone numbers assigned to a particular landline telephone.  They also allow listening to background conversations.  They thus describe the type of communication to be intercepted.  The Orders also enumerate the federal crimes being investigated, along with statutory citations.

   The defendant further asserts that the Orders fail the requirement that interception not be for "any period longer than is necessary to achieve the objective of the authorization," or in any event 30 days.  Mot. to Suppress Wire Intercepts, 2:12-cr-135-DBH, at 8 (ECF No. 47) (quoting 18 U.S.C. § 2518(5)).  Once again, I disagree.  The Orders limit the interceptions to the earlier of 30 days or when they "fully reveal" information about the crimes.

   The defendant also argues that the Orders fail to identify "the agency authorized to intercept the communications."  Mot. to Suppress Wire Intercepts, 2:12-cr-135-DBH, at 9 (ECF No. 47) (quoting 18 U.S.C. § 2518(4)(d)).  In fact, the Orders identify the investigating agency as "special agents of the United States Drug Enforcement Administration," and they were entered upon the affidavits of a DEA special agent.  It is true that the Orders' interception and recording authority extends to "other investigative and law enforcement officers, pursuant to the application of Assistant United States Attorney Daniel J. Perry," but the listening post was designated as the DEA Resident Office in Portland Maine and the authority of other law enforcement officers therefore reasonably is understood as in assistance of the DEA.
*(continued next page)*

SO ORDERED.

DATED THIS 10TH DAY OF SEPTEMBER, 2012

                                          /s/D. Brock Hornby
                                          **D. BROCK HORNBY**
                                          **UNITED STATES DISTRICT JUDGE**

---

(The defendant complained that the interim reports on the wiretaps were not provided to him, but I ordered those provided to him on August 24, 2012.)

Finally, in his reply memorandum, Def. Worthy's Reply Mem. In Support of Mot. to Suppress Wire Intercepts, 2:12-cr-135-DBH, at 2 (ECF No. 96), the defendant argues that the court has never previously addressed the following argument: "The government failed to prove necessity because its application did not address the adequacy of the investigative tool the government intended to and did employ: use of general, escalating indictments to coerce cooperation." What happened is that the Magistrate Judge struck parts of that argument when it was initially made, Mem. Dec. on Hr'g Request and Mots. to Strike and Recommended Dec. on Mots. to Suppress, 2:10-cr-136-DBH, at 13 (ECF No. 348), but actually proceeded to rule on the substance when addressing the rest of the defendant's necessity argument. Specifically, the Magistrate Judge ruled:

> That the government made use of the grand jury later in the investigation, following the completion of the wiretaps at issue and the gathering of further significant evidence against the target subjects, does not undermine [DEA Special Agent] Tierney's assertion that, at these earlier stages of the investigation, the government harbored legitimate concerns regarding disclosure of its ongoing investigation and the potential for flight or destruction of evidence.

Id. at 29. I affirmed the decision. Order Affirming Memorandum Decisions and Recommended Decisions of the Magistrate Judge, 2:10-cr-136-DBH (ECF No. 384). That reasoning continues to apply, and I reject the defendant's argument that the government's later use of superseding indictments, arresting senior members first and prolonging their detention, Def. Worthy's Mot. to Suppress Wire Intercepts, 2:12-cr-135-DBH, at 25 (ECF No. 47), proved that the wiretaps were not necessary, or that an evidentiary hearing is required so that he can explore the government's strategy at the time.